HENRY C. HAYDEN *v.* LYMAN A. HILL AND M. L. SNYDER.*

## *Principal and Surety.    Contract.*

In debt against the sureties on a bond conditioned for the use of due care and diligence by the principal therein in selling and leasing sewing machines as agent of plaintiff, and for an accounting by him for all machines and all money that might come into his hands from such sales and leasings or otherwise, it appeared that when the principal was appointed he agreed to do all the business of his agency and account for all property entrusted to his care, or the proceeds thereof ; and that the principal, after acting for a time alone, took a partner in the business of the agency, and, after carrying on the business with him for a time, and with him receiving funds derived from the business, surrendered the agency, but neglected to account for all of the property that came into his hands. Plaintiff never recognized the partner, but dealt solely with the principal. *Held*, that the principal was at liberty to employ such agency to assist him as he might choose ; that the money that came to the hands of the partner, in legal effect came to the hands of the principal ; and that the sureties must respond for the default as though no partnership had been formed.

It was also agreed that plaintiff should make advancements to the principal, for a time, to enable him to meet incidental expenses, and that the principal should receive his compensation by way of commissions on sales. Defendants knew nothing of the terms of agreement, except what appeared from the bond. Plaintiff made advancements as agreed, and sought to include them among the items to be recovered. Defendants insisted that they should be treated as independent loans, and that commissions should be set off in extinguishment of other claims, on which they were liable, if liable at all. *Held*, that the advancements paid commissions *pro tanto.*

It was also agreed that the principal should pay for rent of the agency store and the keeping of the horse used in the agency business, but he neglected to do so, and, after the termination of his agency, plaintiff paid for them, the lease being in his name, and the horse-keeping having been charged to him with his knowledge and the knowledge of the principal. One of the conditions of the bond was that plaintiff should be indemnified from " any and all loss, cost, damage, trouble, or expense by reason of any neglect or default" of the principal. *Held*, that such expenditures were within the terms of that condition of the bond.

It was also agreed that the principal should " continue the business of the agency ". A part of the money not accounted for was money that the principal and the principal and his partner received on leases taken by a former agent of plaintiff. *Held*, that those items were covered by the agreement and by the condition of the bond.

DEBT on a bond in the penal sum of $2,000, executed by Charles H. Mitchell as principal and the defendants as sureties. Pleas, general issue, performance, and plea of offset. The case was referred, and the referee reported the following facts :

*Heard at the January Term, 1878.

On November 17, 1874, George W. Brown, acting for the plaintiff, who was then the general New England agent of the Wheeler & Wilson Manufacturing Company, at Boston, entered into an agreement with Mitchell, whereby Mitchell agreed to take the agency for the sale of sewing machines and sewing machine goods at Burlington. It was agreed that the plaintiff should turn over to Mitchell all the machines and goods then at the Burlington agency and the horse and wagon theretofore used there, supply him with such other machines and goods as he might require to supply the trade at that agency, and pay him a commission of thirty-six per cent. on the retail price of all machines disposed of by leasing, and forty-one per cent. on all machines sold for cash, and send him the same each month. Mitchell agreed to " continue the business of the agency ", pay the rent and all expenses of the store, pay for the keeping of the horse, pay the freight on all goods, send the plaintiff a report of the business each month, with all money collected, and furnish the plaintiff a bond such as he required of his agents. It was also agreed that the plaintiff should advance money at the outset for a month or two on account of commissions, to enable Mitchell to pay rent and meet other incidental expenses. On the next day Mitchell took possession, and entered upon the duties of the agency. About the same time he delivered to Brown the bond on which this action was brought. The condition thereof was, that Mitchell should use all due care and diligence in the custody, sale, and leasing of all machines, machine attachments, and other goods that had been, or thereafter might be, entrusted to him for sale, &c. ; should return all such property not sold or leased when requested ; should account for and pay over the proceeds of all such property that had been, or thereafter might be, entrusted to him, that had been or thereafter might be sold, leased, or in any way disposed of by him, and all funds that might be in his hands as such agent ; and should indemnify and save harmless said company and the plaintiff from "any and all loss, cost, damage, trouble, or expense by reason of any neglect or default of said . . . Mitchell to the same or any of the above conditions ". Mitchell then went on with the

business of his agency, and the plaintiff sent him money and paid his rent from time to time, as agreed. On January 18, 1875, Mitchell, having sold or leased machines so that he was entitled to commissions to the amount of $144.48, and having collected and retained $40 on leases, to which he was not entitled, took one Clapp as a partner in the business of his agency; and Mitchell and Clapp continued the business till March 18, 1875, when, having sold or leased other machines on which the commissions were $164.36, and collected and retained the further sum of $115 on leases, Mitchell surrendered the agency to Brown. At some time during the continuance of the agency, Mitchell collected $5 from one O'Neil, and $11.48 from others, on leases taken by former agents, and did not account therefor to the plaintiff. At the time the agency was so surrendered, the goods on hand were, per inventory, $44.16 less in value than the goods on hand when Mitchell took possession. After the termination of the agency, the plaintiff, with Mitchell's knowledge and approval, paid $34.10 for rent in arrear on the store, and $37.48 for horse-keeping. The plaintiff sought to recover the sums so collected and retained, the sums paid for rent and horse-keeping, the difference between inventories, and other sums charged to Mitchell on account of alleged delinquencies in the conducting of the agency, amounting in all, after deducting commissions, &c., to $330.33, with interest thereon from July 31, 1875. The defendants denied their liability under the bond for money advanced to or paid for Mitchell, or for money collected by Mitchell on the leases of former agents, or for the acts and omissions of Mitchell & Clapp while they carried on the business as partners, and claimed that under their plea in offset the commissions earned during the agency should be applied in settlement of the plaintiff's claim for money collected on leases, and for goods sold, to the exclusion of the claim for money advanced, &c. They claimed also that the plaintiff advanced the money to and on account of Mitchell without their knowledge or consent, that Mitchell took Clapp into partnership without their knowledge or consent, but with Brown's approval, and that some of the money derived from the business was received by Clapp, and never actually came into Mitchell's hands; and it appeared

that they knew nothing of the terms of the agreement under which Mitchell took the agency, except as it appeared in the bond. It appeared, also, that, although Brown knew that Mitchell took Clapp into partnership, neither he nor the plaintiff ever recognized Clapp as an agent of the plaintiff, but refused to do so ; and that the plaintiff, to whom Mitchell at one time sent a note in course of business indorsed " Clapp & Mitchell," would not accept the note with that indorsement, but returned it to Mitchell for his individual indorsement.

The referee found that Mitchell was responsible for the acts of Clapp ; that the items for rent and horse-keeping were properly charged, " because Mitchell agreed to pay the rent and horse-keeping, and those items accrued during his agency, and he having neglected to pay them, the plaintiff was bound to pay them, as the lease was in his name, and the account for the horse-keeping was charged against him, or the sewing machine company, with the knowledge of the plaintiff, Mitchell, and the parties who kept the horse " ; that the plaintiff's account was correct ; that the balance thereof resulted " from Mitchell's neglect to pay the expenses of the agency, or to transmit to the plaintiff the money collected by him for the plaintiff, and to account for the property of the plaintiff which came into his hands in pursuance of the said agreement made by him and Brown in the outset " ; and that the plaintiff was entitled to recover the sum claimed.

The defendants excepted to the report, for that, on the facts found the plaintiff was not entitled to recover the item of $11.48, nor the item of $5, nor the items of charge for money advanced and money paid for rent, nor the item of charge for money collected and retained by Mitchell & Clapp ; and for that the referee erred in his decision in regard to the application of commissions under the plea in offset. But the court, PIERPOINT, C. J., presiding, overruled the exceptions, *pro forma*, at the September Term, 1877, and rendered judgment, *pro forma*, on the report for the plaintiff for $330.33 with interest from July 31, 1875 ; to which the defendants excepted.

*M. A. Bingham* and *R. H. Start,* for the defendants.

The liability of the defendants is to be determined solely by the contract of suretyship. *Miller* v. *Stewart,* 5 Pet. Cond. 728; *United States* v. *Boecker,* 21 Wal. 657. It is settled that a surety is not to be held beyond the scope of his engagement. His liability is determined *strictissimi juris. McCluskey* v. *Cromwell,* 11 N. Y. 593; *Leggett* v. *Humphreys,* 21 How. 66, 75; *Stull* v. *Hance,* 62 Ill. 52, and cases *passim.*

The liability of the defendants was terminated by the taking in of Clapp as a partner. 2 Chit. Cont. 766; Burge Suretyship, 69; *Bellairs* v. *Ebsworth,* 3 Camp. 52; *Russell* v. *Perkins,* 1 Mason, 368, and cases *passim.* Mitchell was subject to the plaintiff's control, and not to the defendants. *Coe* v. *Vodges,* 71 Pa. St. 383; 3 Kent Com. 124, note *a;* 3 Ad. Cont. 1119.

The commissions should be applied in offset to charges for matters other than money advanced. Fell Guar. 521; Burge Suretyship, 192.

The collection of sums due under old leases was wholly gratuitous. There is no liability for default therein.

*J. W. Russell* and *E. R. Hard,* for the plaintiff.

The plaintiff's right to recover is not affected by the copartnership arrangement. *Palmer* v. *Bagg,* 64 Barb. 641. It is no defence that the defendants did not ascertain the nature and extent of the liability they assumed. 66 N. Y. 326; 2 Am. Lead. Cas. 480.

The opinion of the court was delivered by

REDFIELD, J. This action is upon a bond. The defendants are sureties. The facts are stated in the report of the referee. Charles H. Mitchell took the agency for selling Wheeler & Wilson's sewing machines at Burlington, and gave this bond in the penal sum of $2,000, conditioned that said Mitchell shall: *first,* use all diligence and due care in the custody, sale, and leasing of all machines, attachments, and other goods entrusted to him, &c.; *second,* shall return all such property not sold or leased, when requested; *third,* shall account for and pay over the pro-

ceeds of all such property that has been or may be so entrusted to him, that have been or hereafter may be sold, leased, or any way disposed of by him, and shall account for and pay over all funds that may be in his hands or possession belonging to the plaintiff; *fourth*, shall indemnify and save harmless said company and the plaintiff from any and all loss, cost, damage, trouble, or expense by reason of any neglect or default of said Mitchell to the same or any of the above conditions. The referee finds that the conditions of the bond have been broken; that there is a balance due the plaintiff of $330.33; and that this balance results " from Mitchell's neglect to pay the expenses of the agency, or to transmit to the plaintiff the money collected by him for the plaintiff; and to account for the property of the plaintiff which came into his hands in pursuance of said agreement made by him and Brown [acting for the plaintiff] in the outset."

I. The report shows that Mitchell took in one Clapp, as a partner, and that said agency was managed and funds therefor received, during a portion of the time, by the partnership; and it is claimed that a portion of the funds from sales and leases of the property were received by Clapp and never actually came into the hands of Mitchell. But the report further states that the plaintiff never recognized such partnership, and dealt solely with Mitchell. He refused even to receive a note indorsed by the partnership name. If the plaintiff had seen fit to have consigned the property to the partnership, and dealt with it in such manner that the firm of Mitchell and Clapp would have been the responsible parties in the accounting, these defendants, as sureties for Mitchell in the bond, could not be liable to respond for the laches of the firm; for it would be the default of a different party from that for which they were bound. Mitchell was at liberty to employ such agency as he chose, to assist him. He could pay assistants a stipulated salary, or compensate them with a portion of the profits of the business. It was a matter of indifference to the plaintiff, so long as Mitchell fulfilled all the stipulations of his agreement. If he employed unfit agencies, and thereby the property was squandered and lost, it was, so far as this plaintiff is concerned, the de-

fault of Mitchell alone, and he and his sureties must respond. If the fact that defendant took in a partner in conducting the business of the agency, did enhance the risk of these defendants, as the sureties of Mitchell, it was not induced or recognized by the plaintiff, and. was a matter over which the defendants had quite as much control as the plaintiff. We think that the referee was right, under the circumstances of the case, in finding that Mitchell was "responsible for the acts of Clapp" as for any other agent or assistant that he employed, in conducting the business of the agency; and that money that came to the hands of Clapp, in the conduct of this business, by legal intendment, came to the hands of Mitchell. *Palmer* v. *Bagg*, 64 Barb. 641. There are cases, and such are many of the cases referred to by the defendants' counsel, where the surety for one individual, as to his good conduct and fidelity, or where rendering special service, would not be responsible for the act of a partner; or where the business or service which was the subject of the contract devolved upon a partnership, not by the voluntary act of the party, the surety would not be liable for any act of the partnership. But in this case, the principal contracted to do all the business of the agency and account for all the proceeds of the property entrusted to his care. He received the property which he agreed to account for. When called to account, it is no answer in law or equity to say, I have received the proceeds of the sale of such property, and myself and partner have perverted it, and as I took in a partner to aid me in the embezzlement of the plaintiff's funds, I ask to be excused from accounting. The maxim, *quod facit per alium facit per se*, which Punch translates with aptness and force, "*quod facit per alium, must face it himself*," must control this part of the case.

II. The agreement between the principal parties was, that plaintiff should advance, on commissions to be earned, to enable Mitchell to support himself while starting the business of the agency; and he did advance from time to time, according to the agreement, towards his commissions; and now the defendant claims that such advances should be treated as independent loans,

and the commissions set off in extinguishment of the other claims for the laches of Mitchell. The advancement towards commissions extinguished the commissions *pro tanto ;* and it would be at war, not only with the contract, but with every principle of law and justice, to allow the defendants to recover the commissions, after they have paid them in advance.

III. The defendants claim that $71.58, paid by plaintiff for rent and horse-keeping, should not be allowed. The report states that it was a part of the contract that Mitchell should pay the rent and horse-keeping, that these charges accrued during Mitchell's agency, that he neglected to pay them, that " plaintiff was bound to pay them, as the lease was in his name, and the account for horse-keeping was charged against him or the Sewing Machine Company, with the knowledge of the plaintiff, Mitchell, and the parties who kept the horse." The plaintiff having paid these items, and constrained to do so by reason of Mitchell's neglect to pay them, we think Mitchell was bound by the contract to reimburse the plaintiff, and that the claim is covered by conditions of the bond, which provides that he will " indemnify and save harmless . . . said agent [the plaintiff] from any and all loss, cost, damage, trouble, or expense, by reason of any neglect or default of said C. H. Mitchell."

IV. We think the $11.48 collected by Mitchell on old leases, and the $5 received of O'Neil came into Mitchell's hands in the " *continuation* of the business of the agency," and that the claim is covered by the bond, which provides that Mitchell " shall well and truly account for and pay over all funds that may be in his hands belonging to the plaintiff, or said Wheeler & Wilson Manufacturing Company."

*Judgment affirmed.*