Reed, P. J.,
delivered the opinion of the court.
The validity of the assignment of Bowne to Palmer of the goods in controversy in this suit was before this court in Palmer v. Mc Carthy, 2 Colo. App. 422. The assignment was held void and that Palmer took no title by virtue of the supposed assignment; hence it follows that the replevin was wrongful, and Palmer and his sureties liable to the creditors of Bowne for the value of all goods by him converted.
There is no appearance in this court by defendants; consequently the court is uninformed in regard to the supposed defects in the complaint. The court gives no reasons for sus-, taining the demurrer or for the judgment, and there is only an incidental hint or suggestion on the part of plaintiff that the court held the judgment of McCarthy against Palmer void because the judgment was not in the alternative and made dependent upon his failure to return the goods. Where the defendant is in the possession of the goods and an order of return could be made effective, it is the correct practice to enter an alternative judgment; but where, as in this case, the complaint shows the goods to have been parted with and to have gone beyond the possibility of return j such judgment would be not only unavailing, but idle and foolish. That a *62 failure to make the judgment in the alternative will not render it void is declared'by many eminent authorities.
In the supreme court of the United States, in Boley v. Gristwold, 20 Wall. 486, Chief Justice Waite, in construing the practice act of Montana, which it will be seen is substantially like ours, said: “It is true that under the civil practice act of Montana there can be no judgment for the value if there can be a delivery of the property, but it is not true' that a judgment is necessarily erroneous if the alternative is not expressed upon its face. The court must be satisfied that the delivery cannot be made before it can adjudge absolutely the payment of money. But, if so satisfied, it may so adjudge. A special finding to that effect is not necessary. An absolute judgment for the money is equivalent to,such a finding.
“ In one part of this record it appears that the verdict was for the return of the property, or, in case that could not be made, for $3,000, the value, and $800 damages for the detention, The judgment was for the money, and the presumption is, in the absence of anything in the record to the contrary, that before it was rendered the court had become judicially satisfied that the property could not be returned. In a court of error every presumption is in favor of the validity of the judgment brought under consideration. Error must appear affirmatively before there can be a reversal.”
In Brown v. Johnson, 45 Cal. 77, the court disposes of the question in the following short paragraph:
“ If at the trial of this action (replevin) it had distinctly appeared that the personal property in controversy had been hopelessly lost or had been destroyed, so that a judgment for its delivery would be necessarily unavailing, a failure to render judgment for its possession (under section 200 of the practice act) would, at most, be but a technical error or omission, and one for which we would not reverse the judgment. And in support of such judgment, where, as here, the record discloses nothing on the point, we will intend that the facts actually appearing below were such as to warrant its rendition.” And see Wells on Replevin, sec. 507.
*63 There is another conclusive legal reason why the sureties could not avail themselves of the infirmity of the judgment against Palmer, if there was one. The undertaking of the sureties was secondary, — collateral. Upon the default of the principal, their liabilities as sureties attached.
They were not parties to the adjudication in replevin, nor could they, in this case, avail themselves of. any errors or defects in it. It was res adjudieata. Their undertaking was, in case of the default of the principal, to pay to the defendant such sum of money as might from any cause be recovered against said plaintiff. A judgment was entered against the principal, which he failed to pay. He appealed to the supreme court; failed to prosecute his suit as ordered by the court; the appeal was dismissed and the suit remitted to the lower court.
If the judgment was erroneous, the supreme court was the place to correct it. Failing to prosecute his suit, it, upon dismissal, became final, — res adjudieata. Neither Palmer, the principal, nor his sureties, could question its regularity. Such has been the law since the case of Outram v. Morewood, 3 East, 346, and dozens of authorities might be cited to the same effect. I need only cite the following from the case of Parsons v. Bedford, in the United States supreme court, reported in 3 Pet. 443 : “ The only modes known to the common law to reexamine such facts, are the granting of a new trial by the court where the issue was tried, or to which the record was properly returnable, or the award of a venire facias de novo, by an appellate court, for some error of law which intervened in the proceedings.”
A new trial having been refused in the lower court, and the appellant failing to obtain a reversal in the appellate' court, it became, as to him, conclusive, and certainly could not be attacked collaterally by the sureties in the bond. Nearly the identical question raised in this suit was decided in Mason v. Richards, 12 Iowa, 74. The court said the only question was whether the surety was liable upon the bond, there having been no order for the return of the property *64 in the replevin suit; and, after stating that the bond was in the usual form, proceeded to say that as a general rule the proper judgment in an action of replevin, where the plaintiff fails to maintain his action, is for a return of the property to the defendant; then proceeds:
“ Suppose, however, no such order is made, but the court finds the value of the property and renders judgment therefor against thé plaintiff, does such judgment, though irregular, have the effect of changing the liability of the surety in an action on the bond ? Or in other words, is it necessary in order to make him liable upon his bond, for the breach now under consideration, that a judgment de retorno habendo should first be entered? We think not.
“ The district court could enter no judgment against the surety in the original suit (Janson v. Effey, supra), for he was not in court. The plaintiff, and principal in the bond, was in court, however, and over him the court had jurisdiction. For whatever judgment the court had the power to render against him, though ever so erroneous, until reversed or set aside, he would be bound. And as a judgment erroneous merely would be binding upon him, so it would be upon his surety in an action on the bond.”
The court erred in sustaining the demurrer and dismissing the suit. The judgment must be reversed and cause remanded for further proceedings in accordance with the suggestions here made.

Reversed,.