## STANDARD OIL COMPANY *vs.* MIKE ARNESTAD.

Opinion filed November 20th, 1896.

**Sureties on Bond—Liabilities.**

> Sureties who sign a bond for the fidelity of a firm as agents for the obligee are not liable for funds misappropriated by one of the members of such firm after the dissolution of the partnership and the retirement of the other partner from the business of such agency. And this is the rule notwithstanding the fact that the obligee knew nothing of such dissolution.

Appeal from District Court, Cass County; *McConnell,* J.

Action by the Standard Oil Company against Mike Arnestad and others. Judgment for defendants, and plaintiff appeals.
Affirmed.

*M. A. Hildreth,* for appellant.
*F. W. Ames,* for respondents.

CORLISS, J. The object of this suit is to hold the defendants, as sureties upon a bond, liable for the embezzlement of one of the principals in such obligation. The Standard Oil Company, the plaintiff herein, having selected as it agents at Mayville, in this

state, the firm of Arnestad & Eggerud, required of them a bond with sureties as a condition of shipping them its goods, to be handled by them as such agents at that point. In response to this demand the bond in suit was executed by the firm, and by defendants Hanson and Gullicks as sureties. The sole question before us relates to the liability of the sureties. Their only defense is that the bond secured the honesty of only the firm, and that before the embezzlement in question took place Eggerud had withdrawn from the firm, and that at the time the money sued for was misappropriated the business of such agency was being carried on by Arnestad & Lindstrom. As the construction of the bond is involved, we deem it necessary to quote it in full: "Know all men by these presents: That we, Mike Arnestad and Ole Eggerud, co-partners as Arnestad & Eggerud, principals, and John P. Hanson and C. Gullicks, sureties, are held and firmly bound unto the Standard Oil Company in the sum of five hundred ($500) dollars, lawful money, to be paid to the Standard Oil Company, its executors, administrators, and assigns, for which payment well and truly to be made we bind ourselves, our heirs, executors, and administrators, severally and collectively, firmly by these presents. The condition of the above obligation is such that if, through the neglect, carelessness, or inattention to the business of the said company by the said Arnestad & Eggerud, or either of them, or any of their employes to whom they may intrust the business of the said company, the company shall sustain any loss, or damage, then the said Arnestad & Eggerud, and parties hereto subscribed as sureties, shall indemnify the said company to the amount of this bond; and the subscribing parties also firmly bind themselves to sustain and pay the Standard Oil Company, not to exceed the amount of this bond, any loss resulting to the said company through the theft or fraud on the part of the said Arnestad & Eggerud, or any one to whom they may intrust the business of the company. The direct purpose of this bond is to secure and indemnify the said company against any loss from shortage on account of stock not being properly accounted for,

and loss on account of funds belonging to the said company being misappropriated by the said Arnestad & Eggerud, or either of them, or any one to whom they shall intrust the business of the said company. If the said Arnestad & Eggerud shall faithfully and accurately perform the duties as agents for the Standard Oil Company, and shall correctly account for all stocks or funds belonging to the said company which shall be intrusted to him or his employes acting in his stead, whose acts he herein directly assumes, then the above obligation to be void; otherwise to remain in full force and virtue."

It is urged that by the use of the words "or either of them" the parties intended to cover the individual defalcation of either member of the firm as well after the dissolution of the firm as before. But we are unable to discover any justification for such a construction of the instrument. We think that these words were employed (unnecessarily employed, it is true) to express what the law would have implied had they been omitted; *i. e.* that both partners need not join in the wrongful act to render all parties to the obligation liable. The bond was given to secure the plaintiff from loss growing out of the agency held by the co-partnership, and there is nothing in its language to indicate that the parties were contracting with reference to a possible dissolution of the partnership and the continuance of the agency by one of the firm. Other provisions of the bond indicate the exact reverse. The instrument declares that "the subscribing parties also firmly bind themselves to sustain and pay to the Standard Oil Company, not to exceed the amount of this bond, any loss resulting to the said company through the theft or fraud on the part of said Arnestad & Eggerud, or any one to whom they may intrust the business of the company." Again, the bond provides that: "If the said Arnestad & Eggerud shall faithfully and accurately perform the duties as agents for the said Standard Oil Company, and shall correctly account for all stock or funds belonging to the said company which shall be intrusted to him or

his employes acting in his stead, whose acts he herein directly assumes, then the above obligation to be void," etc. It is evident that the words, "to him or his employes acting in his stead, whose acts he herein directly assumes," were intended to express the plural instead of the singular. In preparing the bond, a blank was probably used which had been so worded as to apply to a single agent. Looking at the whole instrument, and interpreting it in the light of surrounding circumstances, we are unable to find in it any purpose on the part of the obligors to give, or on the part of the obligee to exact, security for the act of either partner after the partnership as such had ceased to act for the plaintiff. Had this been the object of the parties, an explicit provision to that effect could, and certainly would, have been incorporated in the bond. We are therefore forced to fall back upon the inquiry whether the law will imply any promise on the part of the sureties to be responsible for Arnestad's honesty after he had ceased to be associated with Eggerud in the business. On this point we have no doubt. A surety who engages to be responsible for the honesty of a firm may be entirely influenced by the consideration that one of the partners is a man of integrity, and of such strength of character, and such shrewdness and watchfulness in business affairs, that the risk of dishonesty from the action of the other partner, in whom the surety may place no trust, is reduced to the minimum. The sureties in this case may have been willing to become bounden for the fidelity of Arnestad & Eggerud while acting as a firm, and yet at the same time not willing to incur the hazard of obligating themselves as sureties of the partner Arnestad alone. Based upon such considerations as these, the rule of law has long been established that the surety, standing upon the very letter of his contract, may insist that he cannot be held for aught that is done after the dissolution of the firm, for which alone he became responsible. *Backhouse* v. *Hall*, 6 Best and S. 507; *Dupee* v. *Blake*,. (Ill.) 35 N. E. Rep. 867; 2 Bates, Partn. § § 648–655; *Birch* v. *De Rivera*, (Sup.) 6 N. Y. Supp. 206. See, also, *Penoyer* v. *Watson*, 16 Johns. 100; *Crane Co.*

v. *Specht*, (Neb.) 57 N. W. Rep. 1015; *Gaslight Co.* v. *Ely*, 39 Barb. 174; *Machine Co.* v. *Hines*, (Mich.) 28 N. W. Rep. 157; *Barnett* v. *Smith*, 17 Ill. 565; 24 Am. and Eng. Enc. Law, 764, 765. The case of *Dupee* v. *Blake*, (Ill.) 35 N. E. Rep. 867, so far as the principle of law is concerned, presents the same features as the case at bar. The court there said: "The rule is that, if a surety engages for an individual, the engagement is understood to extend to the acts of the individual alone, and will not continue if he takes in a partner; in other words, the surety for an individual is not liable for a partnership of which he is a member. A surety who guaranties that a firm composed of particular individuals will do certain acts or discharge certain duties, cannot be held liable where there is a change in the firm, although the firm name is not changed. As a surety's liability is *strictissime juris*, and cannot be extended by construction, his guaranty to a partnership is extinguished if any partner is taken into or retires from the partnership, unless it appears from the terms of the instrument that the parties intended the guaranty to be a continuing one, without reference to the composition of the firm. A party may be induced to become surety for the individuals who compose the firm, because of his confidence in their integrity, prudence, accuracy, and ability as business men; but he cannot be presumed to have intended to become responsible for the possession of such qualities by some third person who may afterwards be taken into the firm without his knowledge or consent. It is often in the power of one partner, by want of discretion and integrity, to ruin another."

Our attention has been called to certain decisions which it is urged with great earnestness are opposed to the authorities already cited, and we are requested to follow them as enunciating the sounder doctrine. These decisions are *Palmer* v. *Bagg*, 56 N. Y. 523, 64 Barb. 641; *Hayden* v. *Hill*, 52 Vt. 259. But, in our judgment, these cases are plainly distinguishable from the case before us for final settlement. Their facts were different from the facts of this controversy in vital particulars. The sureties there had

become responsible for the honesty of an individual agent. As
the court very properly held, such sureties took the risk, not only
of their principal's dishonesty, but also of the dishonesty of those
whom he might employ in any capacity to assist him in the pro-
secution of the business of the agency. Should he hire a subagent
as an assistant, the sureties would still be bound. And so they
would remain liable if he should see fit to give such assistant an
interest in the profits of the business of the agency, provided
the obligee did not deal with the new firm as agents, and thus
extinguish the original agency. The sureties in those cases un-
dertook to guarantee the fidelity of the agent to his trust, and
therefore necessarily agreed to be responsible for whatever he
should do himself or through his agents and employes. They
agreed to assume the risk of his integrity and his business judg-
ment in employing assistants in any capacity. It is upon this
ground that all these decisions relied on by counsel for plaintiff
proceed. In *Hayden* v. *Hill*, 52 Vt. 258, the court said on this
point: "( 1 ) The report shows that Mitchell took in one Clapp as a
partner, and that said agency was managed, and funds therefor
received, during a portion of the time, by the partnership; and it
is claimed that a portion of the funds from sales and leases of the
property were received by Clapp, and never actually came into
the hands of Mitchell. But the report further states that the
plaintiff never recognized such partnership, and dealt solely with
Mitchell. He refused even to receive a note indorsed by the
partnership name. If the plaintiff had seen fit to have consigned
the property to the partnership, and dealt with it in such a man-
ner that the firm of Mitchell & Clapp would have been the
responsible parties in the accounting, these defendants, as sureties
for Mitchell on the bond, could not be liable to respond for the
laches of the firm, for it would be the default of a different party
from that for which they were bound. Mitchell was at liberty to
employ such agency as he choose to assist him. He could pay
assistants a stipulated salary, or compensate them with a portion
of the profits of the business. It was a matter of indifference to

the plaintiff, so long as Mitchell fulfilled all the stipulations of the agreement. If he employed unfit agencies, and thereby the property was squandered and lost, it was, so far as this plaintiff is concerned, the default of Mitchell alone, and he and his sureties must respond. If the fact that defendant took in a partner in conducting the business of the agency did enhance the risk of these defendants, as the sureties of Mitchell, it was not induced or recognized by plaintiff, and was a matter over which the defendants had quite as much control as the plaintiff. We think that the referee was right, under the circumstances of the case, in finding that Mitchell was 'responsible for the acts of Clapp,' as for any other agent or assistant that he employed, in conducting the business of the agency; and that money that came to the hands of Clapp in the conduct of the business by legal intendment came to the hands of Mitchell." And in *Palmer* v. *Bagg*, the court said: "We do not think this sufficient to change the relations between Fanning and the plaintiffs. The latter did no act creating or recognizing any change. The agencies or means which Fanning employed to dispose of the machines after receiving them did not necessarily interfere with the relations between him and the plaintiffs. He might employ other persons to aid in the selling, and pay them wages or a percentage, or a share of profits as partners. So long as the plaintiffs confined their dealings with him under the power of attorney, they would not be affected by any arrangements he should make." In neither of these cases did it appear that the obligee had dealt with the firm. Had this appeared, a different question would have been presented, for then the sureties could have claimed that their bond did not cover a partnership agency, but only an individual agency. And it is apparent from the language of the courts in these cases that this fact would have constrained them to hold that the sureties were not liable.

Finally, it is said that it does not appear that the plaintiff knew of the withdrawal of Eggerud from the firm, and that hence it follows that the old firm, as a firm, was still liable to the plain-

tiff for the funds misappropriated, no matter by whom they were embezzled. Upon this foundation plaintiff builds up the argument that, inasmuch as the princpals in the bond are liable, so are the sureties. But this reasoning entirely misapprehends the nature of the obligation of the sureties in this case. By signing the bond, they did not, in effect, assert to the plaintiff that they would be bound whenever the principals in the bond were liable in any way to the plaintiff, whether because of their having embezzled the property, or by reason of the doctrine of estoppel which would seal their lips against a denial of liability. They merely agreed to become responsible for the fidelity of the firm so long as each of the members of the firm should remain in the business. They contracted to be bound for the acts of Arnestad so long as they could have the protection resulting from the association of Eggerud with him in the same business. But they did not guaranty the integrity of Arnestad alone, unwatched and influenced by Eggerud, who may have been the only person in whom they reposed any trust. If the plaintiff was ignorant of the change in the firm, so were the sureties; and, if the sureties have a right to stand upon the terms of their contract, then it behooved the plaintiff to ascertain at its peril whether all the persons for whom the sureties had become responsible still remained at the helm of the business of the agency. On this point the decision of the court in *Birch* v. *De Rivera*, (Sup.) 6 N. Y. Supp. 206, is decisive. The court there said: "The fact that plaintiffs were not notified of the change is immaterial. They may have an action against the firm as it existed before the change, because of a failure to notify them of the change, or to publish the notice of dissolution. That proceeds on another principle,— presumption attached to continued firm dealings without notice. The guarantor is not responsible for a state of facts which might justify a recovery against the original members. There is no evidence that he was aware of the change. He seems to be as much without notice as the plaintiffs. But, were it otherwise, we may say, in the language

of Lord Blackburn, 'nothing is stated to show that the defendant was under obligation to inform the plaintiff banking house of the fact, or that he took steps to conceal it. At all events, his contract is to guaranty a co-partnership composed of certain persons, and that contract cannot be altered or extended without his consent.'" See, also, *Backhouse* v. *Hall*, 6 Best and S. 507.

We are unable to agree with counsel for plaintiff that there is not sufficient evidence of the dissolution of the firm of Arnestad & Eggerud. The evidence on the point is very satisfactory. Nor do we find anything in the case to rebut it. The deficit sued for having resulted from misappropriation of funds by Arnestad after Eggerud had retired from the business, the District Court was right in rendering judgment for the sureties on the bond.

It follows that such judgment must be affirmed, and it is so ordered. All concur.