## L. O. LARSON and Robert Walker v. ALBERT HANSON and Julius Frederickson.

(— L.R.A.(N.S.) —, 144 N. W. 681.)

**Claim and delivery — redelivery undertaking — substitute for the property — security for money judgment.**

1. The redelivery undertaking in claim and delivery is not only a substitute for the possession of the property by the plaintiff, but is security for any money judgment recovered.

**Redelivery undertaking — legislature — intent — purpose.**

2. The redelivery undertaking in claim and delivery must be construed with reference to the intent of the legislature in providing for it, and the purpose for which it is given.

**Claim and delivery — two defendants — action mutually dismissed as to one — judgment for plaintiff — sureties not released.**

3. An action in claim and delivery was brought against two defendants; they furnished a statutory redelivery undertaking, which recited that the defendants were desirous of having the property to which the action related returned to them. They each signed the undertaking. H. and F. at their request executed such undertaking as sureties. At the conclusion of the taking of the evidence on the trial, counsel for the two defendants moved a dismissal as to one defendant. This was not resisted by the plaintiffs; the record indicates that it was assented to; a verdict was rendered and judgment entered in favor of the plaintiffs, and against the other defendant; *held*, that the dismissal of the one defendant did not release the sureties from liability upon the undertaking.

**Claim and delivery — evidence — record — property cannot be returned — judgment for value.**

4. Where on the record of the trial of an action in claim and delivery, it appears that the property which is the subject of the action cannot be returned, judgment need not be entered for its return or possession.

**Property sold to others — scattered — cannot be redelivered — money judgment good — sureties liable.**

5. Where the record in an action in claim and delivery shows that the defendants sold the property, which consisted of about forty head of live stock, at auction to ten or twelve different purchasers; that some of them resold it to others, and that it was scattered over a wide territory a year before the trial of the action in claim and delivery,—the plaintiff has made out a case sustaining a judgment for money only in such action, and the sureties on the redelivery undertaking are liable on such undertaking, unless they show clearly and explicitly that the property could have been returned to plaintiffs, and opinions of the principals on the undertaking that they could have returned such property at such time are inadequate to overcome the showing made by the plaintiffs, that the property had been sold and scattered, and much of it resold.

**Redelivery undertaking — judgment — money — sureties — knowledge of sale — sale prior to trial.**

6. Evidence examined, and it is *held* that it was sufficient to support a judgment in claim and delivery for money only, as against the sureties on the redelivery undertaking, and this is especially so when it is shown that the sureties executed the undertaking on the day of the advertised sale, and knew that it was to be sold, were present at the sale, saw it sold, and made no objection thereto, such sale occurring prior to the trial of the action in claim and delivery.

Opinion filed November 20, 1913. Rehearing denied December 29, 1913.

Appeal from a judgment of the District Court of Stutsman County, *Burr,* Special Judge.

Reversed.

Statement by SPALDING, Ch. J.   The story of the litigation leading to this appeal may be epitomized as follows.   In November, 1906, appellant Larson brought an action in claim and delivery against one Foley, and process was placed in the hands of the appellant Walker, as an officer, for service.   Walker took into his possession under the process ten horses, three cows, three calves, thirty-five hogs, and some other property, at the village of Kensal, in Stutsman county.   Not having means for caring for the live stock, he intrusted it as he supposed to the keeping of William Caven and W. L. Caven.   December 1st, 1906, judgment against Foley awarding the possession of the property to the plaintiff Larson was rendered, whereupon Walker applied to the Cavens

for possession, in order that the property might be sold to satisfy the lien adjudged thereon in favor of Larson. William Caven, who was in fact the proprietor of the livery barn in which the property was held, refused to deliver the property, or any of it, unless a feed bill amounting to $523.50 should first be paid. It would appear that this amount was tendered, but refused, whereupon it was deposited in a bank to the credit of William Caven. The Cavens, however, still refused to deliver possession of the property, and action was commenced by Larson and Walker against them to recover possession, on or about the 7th of February, 1907. Process was issued and served by the sheriff of Stutsman county, who took possession of all property mentioned, whereupon William and W. L. Caven procured the execution of an undertaking, in the sum of $2,000, for the redelivery to them of the property in question, under the statute relating to the action of claim and delivery. This redelivery undertaking was signed by William Caven and W. L. Caven, and by the defendants herein, Albert Hanson and Julius Frederickson, and was conditioned for the delivery of such property to the plaintiffs, if delivery should be adjudged, and for payment to them of such sum as might for any cause be recovered against the defendants in the action. The sheriff approved the sureties and returned the property to the possession of the defendants in the action, the two Cavens. The undertaking recited that the property had been taken from the defendants, and that the defendants were desirous of having it returned to them.

On the same day on which the property was returned, W. L. Caven, acting as agent for William Caven, sold it under an agister's lien, claimed at that time to amount to $952.50, it being claimed for the keeping of said property from the time it was delivered to them by the officer, about the 26th day of November, 1906, to the date of sale, about the 9th of February, 1907. The horses were purchased by six different buyers, the cows and calves by four others, and the hogs by still another. The sale aggregated $1,085.25, of which sum William Caven retained $1,028.50, and paid the balance of $56.75 to Foley, the party from whom the property had been originally taken. The action in claim and delivery brought by Larson and Walker against the two Cavens was tried at the January, 1908, term of the district court, in Stutsman county. The defendants Caven filed a joint answer, resisting the rights

of the plaintiffs to possession, and defended the action. At the conclusion of the trial, the attorney for the defendants moved the dismissal of the action as to W. L. Caven, for the reason that it appeared that, throughout the transaction, he had acted only as the agent for William Caven. Counsel for the plaintiffs said that the motion was not resisted, or words to that effect, whereupon the motion was granted. The case was submitted to the jury, which found plaintiffs entitled to possession of all the personal property described, or the value thereof in case delivery could not be had, and that the value of the property was $1,000; and it also assessed $200 damages for the detention and for money spent in recovery of the property. On January 23, 1908, the court rendered judgment in favor of the plaintiffs, Larson and Walker, against the defendant William Caven, for the sum of $1,200 and costs. A few days thereafter, execution was issued against William Caven, and returned wholly unsatisfied. Subsequently, in April, 1909, this action was commenced upon the redelivery undertaking against the sureties thereon, Hanson and Frederickson. On trial, a verdict was rendered in favor of the plaintiffs for $1,742.80 and costs, and judgment was entered accordingly. An appeal was taken to this court from such judgment, and a reversal secured, on the ground that the judgment was not entered in the alternative for the return and delivery of the property, or for its value in case a delivery could not be had, and that the sureties could not be holden on such judgment in the absence of evidence in the record before this court to show that the property had been destroyed or dispersed, or could not be returned to the plaintiffs. It was held that, when the evidence was not before this court, no presumption could be indulged that such a showing was made as against the sureties, and that in order to recover against them, plaintiff must allege and prove that they were entitled to judgment in the form in which it was entered. See Larson v. Hanson, 21 N. D. 411, 131 N. W. 229. The record was returned to the district court; plaintiffs amended their complaint by inserting an allegation with reference to the showing made in the district court in the trial of the case of Larson and Walker against W. L. Caven and William Caven. It alleged that it appeared that after the return and redelivery to said William Caven and W. L. Caven of said personal property, and before the trial of said action, said personal property and all of the same had been by said

William Caven and W. L. Caven, or with their permission and consent, and by their procurement, lost, destroyed, removed from the state, or otherwise disposed of, so that none of the same could be found or recovered or returned to the possession of these plaintiffs, and that the court, taking into consideration such evidence of the disposal of the property, and that none of it could be returned to plaintiffs, and that it had been disposed of and removed with the consent and procurement of these defendants herein, entered a judgment for money only. A retrial was had at the December, 1911, term of the district court, and at the conclusion of the testimony, counsel for both sides moved for a directed verdict in favor of their respective clients. The court discharged the jury, made findings of fact and conclusions of law, and directed a judgment in favor of the defendants upon the ground that the failure of the court to find in the case of Larson and Walker against the Cavens, that the property sought to be recovered in said action could not be returned, and by its failure to adjudge a return of the property to the plaintiffs in that case, and by the voluntary acceptance by plaintiffs of a money judgment against one of the defendants, the plaintiffs waived any right or claim against the sureties on the redelivery bond, and because, by the voluntary agreement of the plaintiffs in the former action to discharge W. L. Caven as a defendant, they canceled the obligation of the sureties. Judgment was entered in accordance with the findings. From such judgment, this appeal is taken.

Preliminary to a consideration of the two points around which all the assignments of error made by appellant revolve, we may note that respondents raised certain objections to the sufficiency of the complaint, which were overruled by the court. We have carefully examined these objections, and find them without merit. They are of such a nature, and of such length, that it would serve no purpose to treat them more specifically. Further reference to facts will be made in consideration of the two law points involved, as suggested by the reasons above given by the trial court in its conclusions of law, for the judgment entered.

*S. E. Ellsworth,* for appellants.

The judgment in the claim and delivery action not being in the alternative-form, the plaintiff, in order to recover from these sureties,

must allege and prove facts showing that they were entitled to judgment in the form entered. Larson v. Hanson, 21 N. D. 411, 131 N. W. 229.

Failure to render an alternative judgment in replevin is no defense to an action on an appeal bond given in behalf of plaintiff, where the property cannot be returned. Selby v. McQuillan, 59 Neb. 158, 80 N. W. 504.

A judgment in an action of replevin under the act of 1873 must be in the alternative, *unless it is shown by the record that a return could not have been had.* Lee v. Hastings, 13 Neb. 508, 14 N. W. 476; Eisenhart v. McGarry, 15 Colo. App. 1, 61 Pac. 56; Mason v. Richards, 12 Iowa, 73; Boswell v. First Nat. Bank, 16 Wyo. 161, 92 Pac. 624, 93 Pac. 661; Clark v. Dreyer, 9 Colo. App. 453, 48 Pac. 818.

Plaintiff may, upon proper showing, proceed against the sureties upon a money judgment for the value of the property, the same as though an alternative judgment had been entered. New England Furniture & Carpet Co. v. Bryant, 64 Minn. 256, 66 N. W. 974.

Judicial bonds of this character should be construed in the light of the purpose and intent of the statute providing for them. Inbusch v. Farwell, 1 Black, 566, 17 L. ed. 188; Sutro v. Bigelow, 31 Wis. 527; Wells, Replevin, §§ 405, 436, 437, 439; Cobbey, Replevin, § 1329.

Even though the court in which a replevin action is pending is at fault in dismissing same, the surety is liable on the bond. Siebolt v. Konatz Saddlery Co. 15 N. D. 87, 104 N. W. 564.

If the principal waive the form, the surety is bound by the result of the case. Pilger v. Marder, 55 Neb. 113, 75 N. W. 559; Clark v. Dreyer, 9 Colo. App. 453, 48 Pac. 818.

If suit against two defendants is dismissed as to one, still the surety is liable. Goodwin v. Bunzl, 102 N. Y. 224, 6 N. E. 399, 28 Jones & S. 441; Auerbach v. Marks, 10 Daly, 171; Inbusch v. Farwell, 1 Black, 566, 17 L. ed. 188.

The undertaking is a substitute for the property. The defendant and his sureties say, "We will return the property or pay its value," as adjudged. Sutro v. Bigelow, 31 Wis. 527; McCormick v. National Surety Co. 134 Cal. 510, 66 Pac. 741; McMillan v. Dana, 18 Cal. 339; Heynemann v. Eder, 17 Cal. 434; McCutcheon v. Weston, 65 Cal. 37, 2 Pac. 727; Gilmore v. Crowell, 67 Barb. 62.

The bond is an enforceable obligation even though the action as to one of two defendants is dismissed. Leonard v. Speidel, 104 Mass. 356; Poole v. Dyer, 123 Mass. 363; Dalton v. Barnard, 150 Mass. 47? 23 N. E. 218; Prior v. Pye, 164 Mass. 316, 41 N. E. 353.

The obligation of the sureties on such a bond impliedly includes an agreement that they are bound by all judicial acts of the court done with authority. Clark v. Dreyer, 9 Colo. App. 453, 48 Pac. 818

The recitals of the order for judgment are prima facie evidence only of the facts necessary to give court jurisdiction, and are subject to explanation or even contradiction. 17 Cyc. 332, and cases cited under notes 77–79; Kammann v. Barton, 23 S. D. 442, 122 N. W. 416

*Knauf & Knauf,* for respondents.

The dismissal of an action in claim and delivery, as to one of two defendants (principals), operates as a dismissal of the sureties, unless the sureties consent to the dismissal. Crook v. Lipscomb, 30 Tex. Civ. App. 567, 70 S. W. 993; Brandt, Surety & Guaranty, 569; Crane Co. v. Specht, 39 Neb. 123, 42 Am. St. Rep. 562, 57 N. W. 1015; Wandelohr v. Grayson County Nat. Bank, 102 Tex. 20, 108 S. W. 1154, 112 S. W. 1046; Nickerson v. Chatterton, 7 Cal. 572; White Sewing Mach. Co. v. Hines, 61 Mich. 423, 28 N. W. 157; Standard Oil Co. v. Arnestad, 6 N. D. 255, 34 L.R.A. 862, 66 Am. St. Rep. 604, 69 N. W. 197; Friendly v. National Surety Co. 46 Wash. 71, 10 L.R.A. (N.S.) 1160, 89 Pac. 177; Woodburn v. Driver, 81 Ark. 333, 99 S. W. 384.

The exceptional facts warranting a money judgment in lieu of an alternative judgment must be alleged and proved against the sureties, in an action on the undertaking. Larson v. Hanson, 41 N. D. 411, 131 N. W. 229; New England Furniture & Carpet Co. v. Bryant, 64 Minn. 256, 66 N. W. 976.

Judgment in claim and delivery *must* be in the alternative, that is, for the property or its value if the property cannot be returned. New England Furniture & Carpet Co. v. Bryant, 64 Minn. 256, 66 N. W. 974; Gallarati v. Orser, 27 N. Y. 326; Fitzhugh v. Wiman, 9 N. Y. 562; 2 Rev. Stat. 536, § 49.

It is the law that a surety cannot be charged beyond the fair import of his undertaking, nor where the contract has been substantially changed. Nickerson v. Chatterton, 7 Cal. 572; Field v. Lumbard,

53 Neb. 397, 73 N. W. 703; Clary v. Rolland, 24 Cal. 148; Mitchum v. Stanton, 49 Cal. 302; Gerlaugh v. Ryan, 127 Iowa, 226, 103 N. W. 128.

By election to take judgment for the value of the property held from the plaintiff, he *waives* right to a redelivery, and thereby releases the sureties from their obligation to deliver, "if so adjudged." Gerlaugh v. Ryan, supra.

There is no breach of the condition to redeliver the property to plaintiffs until a redelivery thereof is adjudged. Colorado Springs Co. v. Hopkins, 5 Colo. 206; Lewin v. Stein, 7 Colo. App. 65, 42 Pac. 185.

The amended complaint failed to allege a redelivery of the property to the Cavens and the objection to evidence along this line, and motion for directed verdict should have been sustained. Nickerson v. Chatterton, 7 Cal. 568.

SPALDING, Ch. J. (after stating the facts). Did the order of the court and judgment entered thereon, on motion of the attorney for the two Cavens, made either with the consent of the plaintiff's attorneys in the replevin action, or without objection on their part, dismissing W. L. Caven, one of the defendants therein, "from said cause of action," discharge the sureties from liability upon the redelivery undertaking executed by the two Cavens as principals, and the respondents herein as sureties?

The action of claim and delivery is to secure the possession of personal property belonging to the plaintiff. The Code makes provision for the process, and for the giving of an undertaking by the plaintiff, to entitle him to take possession of the property, pending the determination of the case. If the defendants desire to retain possession of the property during such time, they are permitted to do so by furnishing a statutory undertaking executed by two or more sufficient sureties, to the effect that they are bound in double the value of the property as stated in the affidavit of the plaintiff, for the delivery thereof to the plaintiff, if such delivery is adjudged, and for the payment to him of such sum as may, for any cause, be recovered against the defendant. Rev. Codes 1905, § 6922. The plaintiff is entitled to the property on commencing his action and furnishing his undertaking and the

service of process, unless a redelivery undertaking is furnished by the defendant. It is clear that the statute contemplates such an undertaking as will render the plaintiff secure, if the property is redelivered and retained in the possession of the defendant. It provides for a return of the property if the plaintiff is adjudged to be entitled to it, and for the payment to him of such sum as, for any cause, may be recovered against the defendant. The undertaking is not only a substitute for the possession of the property by the plaintiff, but is security for any money judgment recovered. The defendant has his option whether to permit the property to remain with the plaintiff, or to furnish the undertaking in lieu thereof, and covering also the money part of any judgment recovered, and retain possession himself.

Now, if the language of this provision is to be taken with the narrow literalness contended for by the respondents herein, the word "defendant" being in the singular, the provision is not applicable to an action in claim and delivery where there is more than one defendant. The respondent contends that, because the undertaking follows the language of the statute, but uses the word "defendant" in the plural, and because judgment was recovered against only one of the two defendants, the proceedings have effected a change in the contract of the sureties without their knowledge or consent, and that thereby they are released or discharged.

We are of the opinion that the terms of the statute must be taken in a much broader sense or meaning, and that they apply to the recovery by the plaintiff as against any or all of the defendants named in the process on which the undertaking was given. To hold otherwise would be to emasculate the law relating to claim and delivery. It would render it extremely hazardous to take possession in any action in which more than one party is made defendant. This case serves to illustrate such danger. It appears from the record that the defendant William Caven was the proprietor of a livery barn, but it was managed by his agent, W. L. Caven. Under such circumstances and governed by appearances, the plaintiff naturally brought his action against the two parties who appeared to be in possession. When it later developed on the trial that the proprietorship was in one only, and the other was simply his agent, counsel for the Cavens moved to dismiss as to the agent. This motion was not resisted, and we may assume the

order dismissing him was made with the consent of the plaintiffs herein.

Can it be possible that, in order to protect their rights and hold the sureties on the undertaking, the case should have been tried through and submitted to the jury, and that the plaintiffs should have protested at all times against the court entering a judgment of dismissal as to one defendant, when there may have been not a *scintilla* of proof to show liability as to him? If not, where can the line be drawn between the degree of assent or opposition to the order of dismissal on the part of the plaintiffs, necessary to hold the sureties? We think the word "defendant" is used in the statute, and the word "defendants" in the undertaking, as a general term, applying to one or more, as the case may be, and according as the judgment may be rendered, so long as the parties against whom judgment is rendered were defendants when the redelivery undertaking was executed and delivered.

But other considerations enter into this question, which it appears to this court are not only persuasive, but conclusive. As we have observed, the undertaking was executed by both Cavens as well as the sureties. It recites that the defendants, that is, William Caven and W. L. Caven, are desirous of having said personal property returned to them, and when the defendant W. L. Caven was dismissed from the action, he was not relieved from liability on the undertaking. He was a party executing that undertaking, and was held therein, notwithstanding the order of dismissal, and even if, as was contended on the trial, he was the only one of the principals who was responsible financially, the sureties were not prejudiced, for they still retained, so far as appears, their remedy against him. Had the undertaking only been executed by the sureties, as is done in some instances, or in the case of undertakings in some forms of action, there might be some question, but no such case is before us. W. L. Caven contracted himself for a return of the property, or for the payment of any judgment obtained, and the sureties have lost none of their rights by the action of the court. This is not a case when plaintiffs and the original defendants by agreement between themselves released one defendant from liability or perpetrated a fraud on the sureties. It is the action of the court in the regular proceedings of the trial, and which all parties must have contemplated might occur, and the sureties contracted with reference to

it.   Many authorities are cited by both parties on this proposition; we think we have examined each one of them, at least all those cited by the respondents.   If we were to concede that one or two of those relied upon by respondents were in point, which we doubt, the greater number are in no manner applicable to this case, and those holding the sureties still liable preponderate overwhelmingly.   We shall not take the space to review all those cited by respondents, but refer to a few as illustrative of practically all.

Harris v. Taylor, 3 Sneed, 536, simply holds that the sureties on a replevin bond in behalf of all the defendants are discharged when the plaintiff voluntarily discharges one of the defendants.   The question is not discussed further than for the court to say the undertaking of the sureties is in joint behalf of the two defendants, and the discharge of one of the latter by the voluntary act of the plaintiff operated as a discharge of the sureties from the obligation of their bond; but in Kelly v. Gordon, 3 Head, 683, the Tennessee court holds that the undertaking of the surety in an injunction bond, where there are several complainants, is in law for the principal severally, as well as jointly; that the surety is in effect bound that each and all of his principals shall perform and fulfil whatever decree may be rendered against all, or either of them, and that therefore abatement as to one of several joint defendants, or the discharge of one upon some ground applicable to him alone, cannot affect the liability of the surety for the surviving party or parties, against whom a decree is rendered.

The court distinguishes the Harris Case, supra, on the ground that in that case, the plaintiff, by his voluntary act, discharged one of the defendants, while here, the act of the plaintiff was failure to revive the suit against the personal representative of the deceased party, and holds that, inasmuch as the law did not impose any active duty or obligation upon the plaintiffs to do so, it was not equivalent to a voluntary discharge of one party; that it was an omission to do what they might have done, but which they were not required to do, and that the discharge of one of the defendants upon some ground applicable to him alone cannot affect the liability of the surety for the surviving party or parties, against whom a final decree may be properly rendered. This, therefore, becomes an authority supporting appellants' contention in the instant case.

Shimer v. Hightshue, 7 Blackf. 238, was decided in 1844, and the facts differentiate it from the case at bar. In that case, two suits were brought, each by three plaintiffs, two of the plaintiffs being the same in each case, but the third a different person. By consent of the parties, the two suits were consolidated without the knowledge or consent of the surety, one of the plaintiffs, who was not a party to one of the suits, was discharged, and it was held that his release might be assimilated to a release of the principal debtor by the payee of a note or bond, which discharged the surety from his liability.

Standard Oil Co. v. Arnestad, 6 N. D. 255, 34 L.R.A. 861, 66 Am. St. Rep. 604, 69 N. W. 197, is not in point. It relates to a bond for the fidelity of a firm, and holds that the sureties are not liable for funds misappropriated by one member of the firm after the dissolution and the retirement of the other partner. Crane Co. v. Specht, 39 Neb. 123, 42 Am. St. Rep. 562, 57 N. W. 1015, is not in point except as it deals with the construction of the contract of guaranty, and holds that it will be strictly construed, and not extended by implication. It holds that sureties are not liable for goods furnished after a change in the firm for which they had become guarantors.

Woodburn v. Driver, 81 Ark. 333, 99 S. W. 384, is not in point. Summary judgment was rendered in that case against the sureties on defendants' retaining bond for the amount of the debt due plaintiffs from defendants, when, under the statute in force, no provision was made for summary judgment for the debt; hence the court held the judgment erroneous. Friendly v. National Surety Co. 46 Wash. 71, 10 L.R.A.(N.S.) 1160, 89 Pac. 177, simply holds that where one member of a firm of contractors assigns his interest to his partner, and is released from liability on the contract without consent of the sureties on the contractor's bond, such sureties are released.

Crook v. Lipscomb, 30 Tex. Civ. App. 567, 70 S. W. 993, is not in point. In that case there were several defendants, and the plaintiff entered into an agreement with a portion of the defendants whereby judgment was to be taken against such defendants without opposition, but no execution was to be issued against them. The sureties and the other defendants were not informed of such agreement, and it seems to have been a fraud upon the other defendants.

In Wandelohr v. Grayson County Nat. Bank, 102 Tex. 20, 108 S.

26 N. D.—27.

W. 1154, 112 S. W. 1046, the court expressly declines to decide the question whether a separate action could be maintained on a joint and several bond, against one of the defendants and the sureties; and that case is not in point for other reasons, especially because it rests upon a peculiar statute.

See also Sartain v. Hamilton, 14 Tex. 348, and Wandelohr v. Grayson County Nat. Bank, supra.

So much for illustrations of the authorities cited by respondent. On the other hand, we find numerous authorities to the effect that the sureties are not relieved from liability by the dismissal or discharge of one defendant. In Sutro v. Bigelow, 31 Wis. 527, an undertaking was given to procure the discharge of certain garnishees in an action. The language of the undertaking was identical in all material respects with that in the case at bar. It was: "To pay unto said plaintiffs the amount of the judgment, if any, which said plaintiffs may recover in the action against *said defendants*," not exceeding a sum named. There were two defendants. Subsequent to the giving of the undertaking, it was discontinued as to one, and judgment was taken against the other only. The reported case is the action against the sureties on the undertaking, who, as in the case at bar, claimed to be released by the discontinuance as to one defendant. The court held that it was the obvious intent of the statute that the persons executing such undertaking should be bound to the same extent as the garnishees discharged from liability by virtue of it, or the property of the principal debtor in the hands of such garnishees would have been bound, and that the undertaking must be liberally construed with reference to such intent, and that therefore the sureties were still liable on the undertaking.

In Heynemann v. Eder, 17 Cal. 434, the identical question involved in the instant case was passed upon. The bond was to pay whatever judgment might be rendered against "said defendants." Judgment was obtained against one only of the defendants. The court held that the security required by the statute was a security for the satisfaction of any judgment that might be obtained, and that the bond was such a security, and that failure to obtain judgment against one defendant did not discharge the sureties. In Poole v. Dyer, 123 Mass. 363, it is held that the result, so far as the sureties are concerned, is the same, whether the plaintiff discontinues against one defendant, or fails to re-

cover against him upon the trial. The action was brought against the sureties on the undertaking after the original action had been discontinued as to one defendant.

Pilger v. Marder, 55 Neb. 113, 75 N. W. 559, was replevin brought against three defendants; property was taken under the writ; trial was had, with the result that judgment was entered in favor of one of the defendants; action was instituted on the undertaking given by the plaintiffs, to recover of the sureties the value of the property, etc. It was urged that, inasmuch as the bond was given in favor of three obligees, they should all have been parties to the suit. The court says: "In an action of replevin in which there are two or more defendants, each may recover a part of the property, or one may be adjudged the owner and entitled to the possession of all of the property, and to have a return of it, or to recover its value. . . . It is also true that all of the parties to a case in replevin are bound by the adjudication of the rights involved and put in issue therein. It seems a correct conclusion that the sureties of a replevin undertaking are liable to the party or parties to whom the final determination of the issue may accord a recovery."

In Goodwin v. Bunzl, 102 N. Y. 224, it is held that where final judgment was rendered in replevin against two defendants only, and in favor of a third, the sureties on the bond were not released.

Auerbach v. Marks, 10 Daly, 171, is also directly in point. In that case, on the trial of the replevin suit, the complaint was dismissed as to one defendant; a verdict rendered for the plaintiff against the other two defendants, and judgment entered thereon. On the failure to deliver the property and return of execution unsatisfied, action was brought against the sureties. The defense was that when the suit was commenced, the property replevied was in the sole possession of one of the defendants, at whose request and in whose behalf they executed the undertaking; that the property was thereupon returned to that defendant; that the other two defendants had no interest in, or possession of, the property, and it was claimed that, no judgment having been rendered against the one defendant, their liability ceased. Evidence was excluded to show these facts, and the verdict directed for the plaintiff, and it was held that the defendants were not entitled to show the facts recited above; that when the undertaking given by the defendants was executed and delivered, the property was in the hands

of the sheriff, and that the sureties bound themselves for the delivery to the plaintiff, if the delivery should be adjudged, etc. The court says that the fact that no cause of action was established against the defendant Goodman, and that the complaint was dismissed as to him, does not discharge the defendants from their obligation; that they became bound for the delivery of the property to the plaintiff, and in case a delivery could not be had for its value; that, in consequence of the undertaking, the property was returned to all the defendants in the replevin action. This conclusion is based upon the language of the undertaking, to the effect that the three defendants were desirous of having it returned to them, and that, in consideration of the return of it to them, the defendants became bound, etc.; that the sureties became bound for the delivery of the property by each and all of the defendants, if a delivery of it to the plaintiff was adjudged; and it was held that they were not discharged of their liability when the defendant Goodman was released from any obligation to deliver it, by a judgment in his favor, if they still remained bound for the delivery by the other defendants; that the dismissal as to one defendant in no way affected the plaintiff's right to the property; that the effect of the judgment was that the one defendant did not wrongfully detain it, and that such a judgment does not entitle a defendant to the return of the property, for it in no way affects the ownership or title of the property; that where there are several defendants, the court may adjudge the return of it to one of them, and refuse it to others, or may award to all of them, or part to one and part to another, or to the plaintiff, as the rights of the parties shall appear, or for other relief not necessary here to state. The court remarks that "the action of replevin is founded upon a tort; it is brought by a party entitled to property against those in possession of it, who have wrongfully taken, or wrongfully withhold it, or who wrongfully conceal or put it out of their possession, to defeat the suit. Where there are several defendants sued as wrongdoers, each may set up a separate defense; each may claim exclusive title to the property, or set up any matter in defense, without reference to the pleading or defense of the other, and judgment may be given in favor of one and against the others, or judgment may be for both parties. . . . Thus, a defendant may succeed, and not be entitled to a return, if a return of the property is ordered only when it appears just." The

court further says: "What the sureties undertook was to be bound for the delivery of the property, if delivery of it should be adjudged to the plaintiff, and the payment of such sum as might be awarded against the defendants. The argument is that the sureties agreed to be bound if all the defendants failed to deliver it. The answer is that one of the defendants was relieved from delivering it by the judgment of the court. In the language of the undertaking, a delivery of it by him was not adjudged, but it was adjudged that it should be delivered to the plaintiff by the other two defendants, and it is for their failure to deliver or pay the sum recovered, if the property was not delivered, that the defendants are answerable."

The language of the undertaking was identical with the case at bar,—that the defendants were desirous of having the property returned to them. We commend the reading of the opinion to counsel. It is exactly apropos to the case at bar and is most persuasive. We have only quoted a small portion.

We conclude that the sureties were not released from liability on the undertaking by the fact that the action of claim and delivery was dismissed at the close of the evidence, on motion of counsel for the principals, either with the consent of, or simply without opposition by, counsel for the plaintiffs therein.

2. Were the respondents relieved from liability by the form of the judgment taken against one of their principals, namely, not in the alternative, but only for money, the value of the property and damages? It is true that, in the usual method of practice under the Code, a judgment in claim and delivery is taken in the alternative for return or the possession of the property, or its value, if a return cannot be had, and undoubtedly, in many cases, the fact that judgment was not so entered would be fatal, in the absence of a motion on the part of the judgment creditor to correct it, but the law does not require idle acts, and it is well established that where on the record it appears that the property cannot be returned, judgment need not be entered for its return or possession.

What is the record in the case at bar on which the money judgment was entered? C. H. Olson was a witness. He was the official stenographer who took the testimony in shorthand in the claim and delivery action. He testified in the case before us that he heard the testimony

of W. L. Caven, as a witness in the claim and delivery action, with reference to the property that was taken, and turned back to the defendants. With his transcript of such evidence before him, he testified that said Caven testified that he sold the property in question for a feed bill incurred in the livery barn, for $950 or $951, on the 7th of February, 1908, and that he was not in position to reproduce the property and turn it over to the plaintiff therein, because the property was gone; that the sale was made under notice and publication. Olson did not have the minutes of all the testimony taken in the case, as a portion of such minutes seem to have been lost between the clerk of the court and counsel for the respondents, which, however, is immaterial. One Bouer testified that he was present at the trial and heard testimony relating to the property having been sold at auction, and regarding the report of such sale, and that it was brought out that the Cavens had sold the property under the lien claimed by them, and filed a report of such sale at Jamestown. In the case at bar, the report of the sale was received in evidence. It showed the process, and the persons to whom the different items were sold, and was made by W. L. Caven under oath as agent for William Caven. This report also showed that the property had been sold to some ten or twelve different people. Bouer also testified that he was present at the sale. William Caven testified that he was not asked a certain question contained in the record to which Olson, the stenographer, testified, and did not make the answer given.

So much for the record relating to the disposition of the. property in the claim and delivery action. It is this record that the court had before it when it rendered the judgment for money only. There is certainly enough in it to sustain the action of the court in rendering such judgment, even if it be conceded that there is a conflict in the evidence by reason of the testimony of William Caven, to which reference has been made. On the facts shown by the record, it was for the trial court to determine what kind of a judgment to enter, and that court must have found, in its consideration of the subject and from the record, that the property could not be returned. No appeal is before us from that judgment. It has become final and the evidence was sufficient to sustain it. See last two sentences of the opinion in Larson v. Hanson, 21 N. D. 411, 131 N. W. 229.

We refer to one other phase of the record in the case at bar. It appears that evidence was received to support the judgment in the claim and delivery action, and it was conclusively shown that the Cavens sold the property involved at auction to a number of persons more than a year before the trial; that some of it had been removed to the northwestern part of the state by the purchasers, the hogs sold to a butcher, and the horses to several farmers, and considerable of them were resold by the purchasers. The respondents undertook to show that it was within the power of William Caven to collect and return each item of such property to appellants. We are not determining whether it was proper to receive evidence in this case to support that judgment. We are inclined to doubt its admissibility, and to think that the record made in the claim and delivery action is the record on which it must be determined whether the form of judgment is justified. See Larson v. Hanson, supra. It, however, seems to have been assumed by both parties on the trial of the instant case that it was then proper and competent to show that the property could, or could not, have been returned when the former judgment was rendered. As to the new proof on this subject, when the holders of the judgment in the former case had shown that the defendants had sold the property to ten or twelve different purchasers more than a year prior to the trial of the action; that it had been scattered over a wide territory, and some resold to other parties; that the plaintiffs had made out a case showing the inability of the defendants to return the property, which, in the absence of a further showing by the defendants, would support the judgment for money only, in view of the circumstances, and particularly in view of the fact that the means of knowledge regarding the ability to return the different pieces of property was necessarily with the defendants in that case, who were witnesses for the defendants in the case at bar,—something more devolved upon them than to testify in effect to the opinion that at all times after the auction sale, they could have gathered together the property and returned it to its owners. It would seem but reasonable to require them to testify as to each specific item, and disclose the sources of their knowledge, and its extent, and to make clear their ability to return the property, before it should be held to overcome the case made by the evidence uncontradicted, of its sale at auction and dispersion. We are impressed by the record with

the belief that the Cavens went as far as they could go towards showing their ability to return the property, and that this showing amounted to nothing more than the naked statement of their opinions that they were able so to do, and that that statement was rendered highly improbable by all the surrounding circumstances, at least so improbable that it was incumbent upon them to overcome by specific and persuasive evidence such improbabilities. In that connection, and as bearing on these questions, we may say that both of the defendant sureties testified in the case at bar; that they were present at the auction sale referred to, saw the property sold, and knew that it was distributed among numerous purchasers; that the sale was on the same day that they executed the redelivery undertaking, and that they made no objection to the sale, and were willing that it should be sold and distributed around among different persons in that community or elsewhere. They appear to have executed the undertaking with knowledge that the property was to be sold and scattered, and for the sole purpose of enabling Caven to sell and scatter it.

In Burke v. Koch, 75 Cal. 356, 17 Pac. 228, the court found that the defendants had sold and disposed of a large portion of the property replevined, and had appropriated the proceeds thereof, and that fact appearing at the trial, it was held that the trial court was not bound to find the character or value of the articles which should be returned, or enter a judgment in the alternative.

Gallarati v. Orser, 27 N. Y. 324, disclosed a record that failed to show that the property could not be returned; hence it was held that it would not support a judgment for money only. In Lee v. Hastings, 13 Neb. 508, 14 N. W. 476, it is held that the judgment in an action of replevin must be in the alternative, unless it is shown by the record that a return of the property could not have been had. In Field v. Lumbard, 53 Neb. 397, 73 N. W. 703, it is held that the judgment should have been in the alternative, and that, as it was not so entered, the sureties were not liable; but the opinion does not disclose, as we read it, whether the record showed the possibility of a return of the property, and if any inference is to be drawn on the subject, it would seem to be that it either showed that it could have been returned, or failed to show anything, hence it is not in point.

See also Ingersoll v. Bostwick, 22 N. Y. 425; Johnson v. Carnley,

10 N. Y. 570, 61 Am. Dec. 762; Sweeney v. Lomme, 22 Wall. 208, 22 L. ed. 727; Cheatham v. Morrison, 37 S. C. 187, 15 S. E. 924; Kennedy v. Brown, 21 Kan. 171; Atkinson v. Foxworth, 53 Miss. 733; Campbell v. Brown, 122 Mass. 516; McCarthy v. Strait, 7 Colo. App. 59, 42 Pac. 189; Wells, Replevin, §§ 428–431; Davis v. Gray, — Okla. —, 134 Pac. 1100.

The above authorities have more or less bearing on this question. We are satisfied that a sufficient showing was made to sustain the action of the appellants against the sureties on the undertaking in question. It is clearly so when giving proper weight to evidence adduced by the party against whom the order was directed on the motion for a directed verdict. One or two other assignments of error may be noticed.

Appellants contend that it was error to exclude proof offered to show that William Caven withdrew from the bank in which appellants had deposited the amount of their claim for the keeping of the property, and appropriated such fund to their own use, and also because evidence was admitted tending to show that respondents became sureties on the redelivery bond in reliance upon the solvency of W. L. Caven. It is not necessary, in view of our conclusion on the two main questions, to pass upon these assignments. In conclusion, we may add that, in so far as the respondents were aware of the facts and participated in or assented to the sale of the property, they are not in position to criticize too closely the regularity or irregularity of the legal proceedings by means of which appellants attempted to regain or recover for their property. They stood by and saw the property dispersed after they signed the undertaking,—they made no objection and are in much the same position that Caven occupies. We have made no reference to the findings of fact made by the court, because they in no manner conflict with our conclusions, and in fact sustain them. Among other things, the court expressly found that the property was sold by the two Cavens, and that they, by such sale, devested themselves of all title in and to such property, or any part thereof, and in and to the possession thereof, and never again became its owners or possessors. The conclusions of law found by the court render it unnecessary to further consider the findings. The judgment of the District Court is reversed, and the District Court will enter judgment for plaintiffs with costs.

BURKE, J., disqualified.