## STATE on Behalf of BICKEL et al, Respondent, v. INTERSTATE SURETY COMPANY, Appellant.

### (204 N. W. 650.)

(File No. 5464.   Opinion filed June 30, 1925.)

1. **Evidence—Partnership—Conditional Delivery—Evidence of Conditional Delivery of Bilateral Contract, Dissolving Partnership, Held Incompetent.**

   Evidence of conditional delivery of plain, unambiguous, bilateral contract, for present dissolution of partnership, held incompetent, in action against it, its members, and surety on warehouseman's bond, especially where directly contradicting writing, or going entirely to question of settlement, which was not embraced in writing.

2. **Principal and Surety—Warehouseman—Surety on Warehouseman's Bond of Partnership Not Liable on Storage Tickets Issued After Dissolution Thereof.**

   Surety on warehouseman's bond given by partnership which became insolvent and had no grain to deliver on storage tickets issued by it, held not liable on tickets issued after dissolution of partnership.

3. **Principal and Surety—Warehouseman—Surety on Warehouseman's Bond of Partnership Held Liable on Storage Tickets Issued Before Dissolution of Partnership.**

   Surety on warehouseman's bond of partnership held liable on tickets issued before dissolution, to holders without notice of cancellation of bond by dissolution, where before expiration date of bond partnership became insolvent and had no grain to deliver, as presentation and demand would have been futile.

Appeal from Circuit Court, Campbell County; Hon. J. H. Bottum, Judge.

Action by the State of South Dakota, on behalf of F. F. Bickel and others, against the Interstate Surety Company and others.  From judgment and order for plaintiff, named defendant appeals.  Reversed and remanded, with instructions.

*Sterling, Clark & Grigsby,* of Redfield, and *Corrigan & Walton,* of Aberdeen, for Appellant.

*A. A. Brown,* of Mobridge, for Respondent.

(1)   To point one of the opinion, Appellant cited: Standard Oil Co. v. Armstead (N. D.), 34 L. R. A. 861; Northern Minnesota Drainage Co. v. Mageau (Minn.), 154 N. W. 1092; Dupee v. Blake (Ill.), 35 N. E. 866.

DILLON, J.   For some time prior to August, 1920, one Fisher and Olson, copartners, owned and operated a grain elevator at Herreid, this state, as the Herreid Grain Company. About August 26, 1920, they applied for, and obtained from the Interstate Surety Company of Redfield, South Dakota (the defendant herein), a warehouseman's bond in the penal sum of $8,000, the amount fixed by the Board of Railroad Commissioners, whereby they were licensed, and engaged in the business of conducting an elevator and storage warehouse for grain. During the spring of 1921, the Herreid Grain Company became involved financially, and after July 20, 1921, was insolvent and did not, at any time thereafter, have any grain to deliver upon the storage receipts issued to the plaintiffs herein. Demand was made for the grain, or value thereof, as required by law, on the Herreid Grain Company, and upon the Interstate Surety Company. This was refused, and this action was brought in behalf of the storage check holders, against the Herreid Grain Company, and said Fisher and said Olson, copartners, and the Interstate Surety Company to recover the value of the grain represented by the storage checks. Fisher and Olson continued in business as the Herreid Grain Company until January 25, 1921, at which time an agreement was entered into, providing that the partnership was to be dissolved, and that said Olson was to sell said Fisher all of his interest in all the assets of Herreid Grain Company. Said Olson died about February 1, 1922; his estate having been insolvent since July 21, 1921. The court instructed the jury that, if the partnership was dissolved, then the plaintiff could not recover for grain delivered after the dissolution. The jury found for the plaintiff, assessing damages at $8,000 against the Interstate Surety Company, and the court entered judgment against Jacob B. Fisher for $10,240. It is from such verdict and judgment that this appeal is taken.

Defendant Interstate Surety Company, by its argument, admits the execution of the bond, but contends that the partnership between Fisher and Olson was dissolved about January 25, 1921,

and that because thereof it is not liable at all, or that it is only liable for grain delivered prior to claimed date of dissolution; that there is no evidence to show that demand was ever made by the holders of the warehouse storage tickets, issued by Herreid Grain Company, upon Fisher and Olson, for the delivery of grain stored with them, or for the payment of the value thereof.

Plaintiff contends that, prior to the bringing of this action, each warehouse storage ticket holder and owner demanded said grain or the value thereof, which demand was refused; that Herreid Grain Company had issued warehouse storage tickets to cover grain in excess of $8,000.

[1]   On January 25, 1921, an agreement was entered into between Fisher and Olson, which was as follows:

"It is mutually agreed by and between J. B. Fisher and A. J. Olson, copartners doing business under the firm name of Herreid Grain Company, that the said copartnership is hereby dissolved.

"It is further agreed that A. J. Olson is released from all obligations of the above-named copartnership, which obligations are hereby assumed by J. B. Fisher, who agrees to pay and satisfy the same.

"It is further understood and agreed that J. B. Fisher hereby becomes the owner of all assets of the Herreid Grain Company.

"Signed and sealed by both parties this 25th day of January, 1921.                                             J. B. Fisher.
                                                                "A. J. Olson.

"Witness:  M. J. Schirber.
        "F. W. Schirber."

The trial court erred in admitting, over proper objection, testimony of the defendant Fisher purporting to show a conditional delivery of the contract.   All of the cases cited by respondent with reference to the admissibility of evidence to show conditional delivery of a writing are cases where the writing was unilateral in form, such as a note or deed or order signed by one party only. Under such circumstances the writing does not purport to express the obligation of more than one party, and such writings become effective as a general rule by delivery, and the courts have been rather liberal in permitting evidence as to conditions on which the manual delivery was made.   The contract in this case is bilateral,

executed by both parties in the presence of witnesses, a copy being retained by each party. It is a plain unambiguous contract for the present dissolution of the copartnership, and we think must be given effect in accordance with its terms. In addition to this, the evidence offered under the guise of showing a conditional delivery is entirely insufficient to establish any such condition, and goes either in direct contradiction of the writing, or else to another matter entirely; namely, the question of a settlement between the partners upon dissolution of the partnership, a matter not embraced in any wise by the writing. There is not any reason whatever why the parties should not agree in writing to the present dissolution of the partnership, and leave the matter of the settlement between themselves in connection therewith for later determination upon an audit of the books, and that is apparently what was done in this case. We are clearly of the opinion that the evidence offered was incompetent, and the objections made thereto should have been sustained, and that the evidence clearly shows that the partnership terminated between Fisher and Olson January 25, 1921.

[2] The Interstate Surety Company bonded the copartnership of Fisher and Olson, and we are of the opinion that the surety could not be held for any tickets issued after the dissolution of the partnership. It is, of course, true that, after a dissolution as between partners, they may, under some circumstances, be liable to third persons dealing with them until proper notice of the dissolution is given, and in some cases until such notice is brought home to the third person. This, however, is not because the partnership in fact continues after dissolution and prior to notice, but because the former members of the partnership under the circumstances are estopped to deny its continuance. This principle of estoppel would not apply to, and could not reach, the surety company, and, when the partnership was in fact dissolved on January 25, 1921, liability of the surety for subsequent acts ceased. Standard Oil Co. v. Arnestad, 6 N. D. 255, 69 N. W. 197, 34 L. R. A. 861, 66 Am. St. Rep. 604.

[3] The question then arises whether any matters transpired between August 1, 1920, being the initial period of the bond, and January 25, 1921, when liability was ended by dissolution of the partnership by reason of which any liability became fixed on sure-

ty. The storage tickets involved in this action fall into two classes with reference to this point: First, those where the grain was not delivered at the elevator until after January 25, 1921. Second, those where delivery of grain was prior to that date. As to the first, under our view of the law manifestly there could not possibly be any liability upon the part of the surety company. As to the second class, embracing some 16 of the storage tickets, the grain was delivered prior to January 25, 1921. The bond recites in part:

"The condition of this obligation is such that, whereas the above-bonden principal (Jacob B. Fisher and A. J. Olson, doing business under the name of Herreid Grain Company, a copartnership) has made written application, * * * and whereas a license is about to be issued by said Board of Railroad Commissioners giving them authorityy * * * to carry on and conduct the business of a public warehouseman and to store grain in accordance with the laws of said state in relation thereto for the year commencing August 1, 1920, and ending July 31, 1921. Now therefore, if said Jacob B. Fisher and A. J. Olson shall faithfully perform their duty as public warehouseman, and shall fully and unreservedly comply with all laws of the state of South Dakota, in relation thereto, then this obligation to be void, otherwise to remain in full force and virtue."

When the copartnership took in grain and issued a storage ticket during the life of the bond, that is, prior to the dissolution of the partnership on January 25, 1921, an incohate liability on the bond arose in behalf of the ticket holder. The ticket holder having no notice of the cancellation of the bond by dissolution of the partnership, the surety company could not avoid the vesting of complete liability in favor of such ticket holders, if the facts arose which vested such liability prior to July 31, 1921, the expiration date of the bond. The evidence shows, without dispute in this case, that the copartnership, Herreid Grain Company, had no money at any time after July 20, 1921, nor did they have any grain at Herreid or anywhere else, nor could they at any time after July 20, 1921, have paid any of the storage tickets in cash or delivered the grain upon any of them. Presentation and demand would have been futile. The surety company, therefore,

under the circumstances of this case, cannot avoid liability upon those storage tickets which were issued while the bond was actually in force, that is, prior to January 25, 1921. It is not liable upon any of the storage tickets issued thereafter.

We are of the opinion that the evidence in this record will warrant recovery for the grain checks issued before January 25, 1921, and the plaintiff is entitled to judgment for the amount represented by said storage checks.

The judgment and order appealed from are reversed, and this cause is remanded with instructions to the trial court to enter Judgment in accordance with this opinion. No costs will be allowed on this appeal.

SHERWOOD, J., not sitting.

POLLEY, P. J., concurs in the result.

Note.—Reported in 204 N. W. 650. See, Headnote (1), Evidence, Key-No. 420(3), 22 C. J. 1540, Principal and Surety, 32 Cyc. 109; (2) and (3) Principal and surety, Key-No. 67, 32 Cyc. 109.