WISCONSIN MIRROR PLATE COMPANY, Appellant, vs. FIDELITY & DEPOSIT COMPANY OF MARYLAND, Respondent.

*April 6—May 11, 1926.*

*Principal and surety: Bond against defalcation by partners: Conversions during continuance and after dissolution of partnership.*

The surety on a fidelity bond issued to a manufacturer against the defalcation of its agents, a partnership, is liable for conversion by one of the partners of property shipped to the partnership before the dissolution of the partnership by the retirement of one partner, where the conversion does not take place until after such dissolution.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed, and remanded with directions.*

The plaintiff entered into a contract with Monte Z. Mitchell and Norman Huff, doing business as copartners in Los Angeles, to represent the plaintiff in the Pacific Coast territory in the sale of mirrors manufactured by the plaintiff. Under this contract mirrors were either shipped direct to customers or sent to the partnership on consignment. The contract provided that all mirrors were to be invoiced to customers by the plaintiff and that remittances were to be made by the customers to the plaintiff, whether shipped to customers direct or consigned to the partnership.

The defendant company gave to the plaintiff a surety bond which recited that "Monte Z. Mitchell and Norman

Huff, Co-Partnership, (doing business as) Mitchell-Huff Company, hereinafter called the 'Employees', has been appointed to the position of Manufacturer's Agent in the service of *Wisconsin Mirror Plate Company,* Sheboygan, Wisconsin." The condition of the bond was that the defendant company would reimburse plaintiff "to the extent of the sum of five thousand and no-100 dollars, and no further, for such pecuniary loss as the Employer shall have sustained by any act of larceny or embezzlement committed by the Employee after the 8th day of November, 1921."

On February 25, 1922, the partnership was dissolved by the retirement of Mr. Huff, his interest in the partnership being acquired by Mr. Mitchell, who continued the business and assumed all responsibility for the obligations of the partnership. Prior to February 25, 1922, the plaintiff had shipped and consigned to Mitchell and Huff as copartners mirrors of a value in excess of $40,000. After the dissolution of the partnership the total value of mirrors consigned to Mitchell or to the Mitchell-Huff Company was slightly in excess of $1,000.

The jury found that after the dissolution of the partnership Mr. Mitchell, while acting as plaintiff's agent, holding mirrors in trust for the plaintiff, did wrongfully appropriate and convert to his own use and embezzle mirrors belonging to the plaintiff of the value of $9,800.

For the appellant there was a brief by *Paul T. Krez* and *Detling, Detling & Whiffen,* all of Sheboygan, and oral argument by *C. F. Whiffen.*

For the respondent there was a brief by *Benfey, Benfey & Runge* of Sheboygan, and oral argument by *Theo. Benfey.*

STEVENS, J. The trial court dismissed plaintiff's complaint because it appeared that the defalcation had all occurred after the dissolution of the partnership. The court

held that the withdrawal of one member of the partnership released the defendant surety from liability for any defalcation which occurred after the partnership was dissolved. In *Standard Oil Co. v. Arnestad,* 6 N. Dak. 255, 69 N. W. 197, upon which the trial court bases its judgment, the defalcations occurred after a new partner had been taken into the firm. Had a new partner replaced Mr. Huff, a different question might have been presented in this case. But here the defalcation was on the part of one of the individuals for whom the defendant company had, for a valuable consideration, become surety.

When the defendant company signed the surety bond in suit it became responsible for the acts of the two individuals who made up the partnership. When mirrors were shipped or consigned to this partnership an inchoate liability on the bond arose which was not discharged until the mirrors had been paid for as required by the contract. The bond assured the plaintiff that both of the individuals that made up the partnership would fulfil the obligations of their contract with the plaintiff by faithfully accounting for all mirrors consigned to them. Even if all the mirrors shipped after the dissolution of the partnership had been converted to his own use by Mr. Mitchell, there would still remain mirrors of a value much in excess of the penal sum of the bond which were shipped while the partners were acting as agents of the plaintiff and while Mitchell and Huff were still conducting the agency as partners, and the plaintiff had the right to rely upon the assurance given by this bond that the individuals that made up the partnership would fulfil their contract and that neither of the partners would wrongfully convert these mirrors to his own use.

From the fact that $9,800 in value of mirrors were converted, while only about $1,000 in value of mirrors were shipped after the dissolution of the partnership, it follows that mirrors in excess of $5,000, the penal sum of the bond,

which were consigned to the partnership before dissolution, were among those wrongfully converted by Mitchell. The plaintiff is therefore entitled to recover on the bond the entire penal sum of $5,000 with interest thereon from November 22, 1923, the date of the commencement of this action.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.